## GENERAL LLOYDS FIRE & CASUALTY CO. v. BAILEY.

### No. 12459.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 10, 1952.

Rehearing Denied Jan. 7, 1953.

Glosserman & Pfeil, San Antonio, for appellant.

Morriss, Morriss, Boatwright & Lewis, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Weldon Bailey against General Lloyds Fire & Casualty Company, seeking to recover damages to his 1½ ton Chevrolet truck, caused by a collision on the Seguin Highway on May 19, 1951, under the provision of an "E-1, Collision or upset coverage clause" in a standard Texas automobile insurance policy issued by defendant to plaintiff on July 31, 1950, and in full force and effect at the time of the collision. The trial was to a jury, but the court disregarded the jury's answer to issue number three and rendered judgment for plaintiff against defendant in the sum of $950. General Lloyds Fire & Casualty Company has prosecuted this appeal.

Appellant's first contention is that the court erred in granting appellee's motion for judgment notwithstanding the verdict because the insurance policy held by appellee did not cover the loss sustained by him.

The jury in answer to issue number three found that Weldon Bailey used the truck in question to make regular or frequent trips of more than fifty miles from San Antonio, Texas, during the term of the insurance policy in question. Appellant contends that such use was in violation of the terms of the policy and therefore the truck was not covered at the time of the collision.

It is not here questioned that a casualty insurance company may write a policy of insurance on a commercial truck that is to be generally used within a radius of fifty miles of the city where his truck is usually garaged, but the first question here is whether the policy herein is such a policy.

Art. 5.06 of our Insurance Code, V.A.T. S., provides as follows:

"Policy Forms and Endorsements

"In addition to the duty of approving classifications and rates, the Board shall prescribe policy forms for each kind of insurance uniform in all re-

spects except as necessitated by the different plans on which the various kinds of insurers operate, and no insurer shall thereafter use any other form in writing automobile insurance in this State; provided, however, that any insurer may use any form of endorsement appropriate to its plan of operation, provided such endorsement shall be first submitted to and approved by the Board; and any contract or agreement not written into the application and policy shall be void and of no effect and in violation of the provisions of this subchapter, and shall be sufficient cause for revocation of license of such insurer to write automobile insurance within this State. Acts 1951, 52nd Leg., ch. 491."

Art. 5.10 of the same Code provides as follows:

"Rules and Regulations

"The Board is hereby empowered to make and enforce all such reasonable rules and regulations not inconsistent with the provisions of this subchapter as are necessary to carry out its provisions, including full power and control over any administrative agencies and/or stamping office which may be organized or established by insurer with the Board's approval to carry into effect the provisions of this subchapter. Acts 1951, 52nd Leg., ch. 491."

Before our present code was adopted similar provisions were found in Art. 4682b.

It will be noted that under the provisions of Art. 5.06 the Board of Insurance Commissioners is required to prescribe policy forms for each kind of insurance uniform in all respects, "and no insurer shall thereafter use any other form in writing automobile insurance in this State".

It will also be noted that under the provisions of Art. 5.10 the Board is empowered to make and enforce all such reasonable rules and regulations as are necessary, with certain limitations not here involved.

Under the law, as it existed at the time the present policy was written, the Insurance Commissioner did promulgate rules and regulations, as he was required to do, and one of such rules is known as No. 34, and is denominated "Classification According to Distance of Operation—Commercial Automobile Section." Among other things, Rule 34 provides as follows:

"The Limitation of Use Endorsement 111c must be attached to all policies covering commercial vehicles classified above as Local Hauling and Intermediate Hauling Risks."

 The policy involved here did not have Endorsement 111c attached, and therefore the policy was unlimited as to use of the truck.

It is true that in the body of the policy is found "111c, Commercial Local 50 miles radius of San Antonio, Texas."

But such statement does not comply with regulation No. 34, and is ineffectual to limit the liability of appellee to a 50 mile radius.

The judgment is affirmed.